## PILCHER v. CONTINENTAL TRUST CO.
### et al.
### No. 5928.

Court of Appeals of the District of Columbia.
Jan. 22, 1934.

Rehearing Denied Feb. 19, 1934.

Robert H. McNeill and George H. Mc-Neill, both of Washington, D. C., for appellant.

Walter B. Guy, Frederic B. Warder, Louis H. Mann, Brice Clagett, and Challen B. Ellis, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

The appellant is the assignee of a kinsman, W. B. C. Pilcher, who on June 2, 1924, executed a promissory note to one of the appellees, Continental Trust Company, in the amount of $875 payable sixty days after date, with Robert L. Taylor, Jr., as indorser thereon.

Mr. Taylor has since died, and his executrix is the second appellee here.

The bank discounted the note, and Pilcher deposited as collateral security therefor certificate numbered 21 for 45 shares of the capital stock of the Southern Roads Company, a Delaware corporation.

The note was in the customary bank form, containing a provision authorizing the bank to sell or otherwise deal with the collateral for its protection on nonpayment of the note when due.

The note was not paid at maturity, and in September, 1924, the bank sold certain other collateral belonging to Pilcher held to secure a different note, and from that sale applied $44.75 as a credit on the note indorsed by Taylor, and collected from Taylor $830.25, the balance then due on this note. The bank thereupon delivered to Taylor the uncanceled Pilcher note and advised him that the collateral deposited as its security would be delivered to him when he called for it, and the bank held this collateral for the account of Taylor until October, 1927, when it received a letter from Pilcher directing it to transmit the collateral to Warren Bros. Company in Boston for sale; whereupon the bank consulted Taylor, who requested delivery of the collateral to him, and this the bank did.

Appellant acquired the claim upon which the suit is brought by purchase from W. B. Campbell Pilcher, maker of the note and owner of the collateral.

After the refusal of the bank to deliver the stock to him, he brought this action against the bank and Taylor's executrix.

The bank demurred to the declaration; the trial court sustained the demurrer, and, on the trial of the case against Taylor's executrix, directed a verdict for the defendant.

The appeal brings up the correctness of the action of the trial court, both as to the bank and as to the executrix.

■ In sustaining the demurrer of the bank, the trial court was of opinion that the question was ruled by our decision in Mankey v. Willoughby, 21 App. D. C. 314. In that case certain shares were pledged as security for a promissory note, and upon default by the maker payment was made by the executrix of the indorser and the security delivered to her.

She subsequently brought suit to enforce a lien on the security or to have it sold to indemnify her for the money advanced in taking up the note, on which facts we said:

"The case as thus presented, apart from the matters of defense, is plainly within the established principle, that a surety, or a party who stands in the position of a surety, such as indorser or guarantor, is entitled to receive and to be subrogated to all the rights and remedies of the creditor whose debt he has been required to pay, as to any security, fund, lien or equity, which the creditor had against any other person or property, on account of such debt. This right of the surety to be subrogated, on the payment of the debt, to the securities held by the creditor, does not depend upon contract, but rests upon principles of justice and equity. The surety is entitled to have the security in the same plight and condition in which it stood in the creditor's hands, and is entitled to all the remedies thereon that were available to the creditor."

We see no reason to modify the principle as stated in the Mankey Case, and applied to the pending case, which states very clearly, the duty of the bank, on default of the maker of the note and its payment by the indorser, to deliver the collateral to him, and, while it appears from the averments of the declaration here that this was not done immediately, it was done several years after the payment and before there had been any tender of repayment on the part of the appellant or his assignor.

Obviously, from the time the note was paid by Taylor, the indorser, to the time of the delivery of the collateral to him, the bank held it as Taylor's agent.

It was required at the time of payment to deliver up the securities as a means of indemnity to him on account of his payment, and the fact that he neglected for a time to take physical possession of the certificate does not affect the legal situation, for the bank after his payment held it always as his agent and for his account.

It was the bank's duty under the circumstances, when he demanded the collateral, to deliver it to him, and the request of Pilcher that the bank send the collateral to Boston for sale for his account would not affect the indorser's rights.

If, when he made his demand on the bank, Pilcher had tendered the amount of the debt with interest, an entirely different question would arise, but that was not done, and in the circumstances the demurrer was properly sustained.

■■ But the case against Mrs. Taylor, as executrix, is of a broader aspect. Appellant, as plaintiff in the suit against her, offered to show that, after delivery of the collateral to Taylor, the latter sold it to the very purchaser in Boston who Pilcher had indicated to the bank would buy it, and that Taylor sold it to this purchaser for $1,108 in excess of the amount he was then entitled to receive in complete indemnification for the sum paid by him on Pilcher's note.

The object of the suit is to recover this excess, and there can be no question of the right of a pledgor of property as security for a debt to have an accounting from the pledgee of the proceeds of the property when sold by the pledgee to indemnify him for a default of the pledgor.

In such a case the pledgee does not get an absolute title to the thing pledged but a right of possession therein, with power to retain the pledge or to sell it, and, if the pledge contract permits, to buy it for his own account.

But where, as is alleged here, he sells it to another, he is accountable to the pledgor for any excess he receives above the debt, interest, and costs of sale.

■ In such a case the question is ordinarily one of fact; yet here the facts were not permitted to be shown, for, in the view the trial court took of the nature of the assignment, the merits were never reached, and the plaintiff was nonsuited on the ground that he had no valid assignment of the claim as against the executrix.

In this ruling we think the court below was in error.

The assignment was in the following words:

 989

"For value received, I, the undersigned, hereby transfer and assign to Jas. S. Pilcher, of Nashville, Tennessee, the right, title, and ownership of said undersigned to the value of forty-five (45) shares of the preferred stock of the Southern Roads Company, certificate no. 21, as of the 28th day of October 1927, in excess of the amount of the note of said undersigned to the Continental Trust Company, of Washington, D. C., for eight hundred and seventy-five ($875.00) dollars, dated June 2, 1924, due in sixty days and credited $44.75 September 30, 1924, for the payment of which note said stock was therein and therewith pledged as collateral security for the payment thereof, which said stock said Trust Company on October 28, 1927, misappropriated and disposed of in violation of said pledge agreement, when said stock was of the value of $2,-160.00.

"Witness my hand this May 28, 1928.

"W. B. Campbell Pilcher."

The trial court refused to admit the assignment in evidence because of the wording of its final clause.

The language there used the court thought qualified the general nature of the assignment and made it inadmissible as against the executrix for the reason that it did not assign any claim against her or her testator.

But in reaching this conclusion we think the court gave undue effect to a descriptive part of the instrument and too little effect to its otherwise comprehensive terms.

The assignment acknowledges a valuable consideration, and transfers to the assignee "the right, title, and ownership" of assignor in the stock certificates in question "in excess of the amount of the note."

All else is descriptive and neither broadens nor narrows assignee's rights.

To hold, therefore, that because the writing declares that the bank misappropriated the proceeds of the collateral it shows an intention of the pledgor to hold the bank solely responsible is unjustifiable, and would be equivalent to reading into the writing itself restrictions which are not there.

The assignment itself is absolute and carries with it every right and every remedy the assignor possessed, and it was therefore error to exclude it.

We are also of opinion that certain letters written by the bank in connection with the transfer of the collateral, and excluded by the court, should have been admitted in evidence.

These letters were part and parcel of the transaction out of which the suit grew, and they were written by the depositary bank in relation to its transfer of the collateral to the testator of the executrix.

As against the bank, they would clearly have been admissible, but they were also admissible as against the executrix because the bank was then holding the security as agent of the testator of the executrix, and, in that aspect, she is bound by the bank's acts as fully as if the letters had been written by her testator.

And so again we think the evidence of the broker's sales account of the certificate in question, rejected by the trial court, should have been admitted.

The identification of the broker's records by the clerks who kept them in his Washington office was sufficient to entitle them to be received, but, as these questions of evidence may not arise on a new trial, they need no further notice here, and, on the ground that the court was in error in excluding the assignment, we reverse the judgment and remand the case for a new trial in accordance with this opinion.

Reversed.